UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LORI J. LYNN and JAVIER GONZALEZ, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 4:15CV00916 AGF |
| PEABODY ENERGY CORPORATION, et al., | )<br>)<br>) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This putative class action is brought under the Employee Retirement Income Security Act of 1974, ("ERISA"), claiming breach of fiduciary duties by Defendants, the fiduciaries of three ERISA-governed Employee Stock Option Plans ("ESOPs") made available to employees of Peabody Energy Corporation ("Peabody") as retirement investment options. The matter is before the Court on Defendants' motion (ECF No. 83) to dismiss Plaintiffs' Second Amended Class Action Complaint for failure to state a claim. Oral argument was held on the motion. For the reasons set forth below, the motion to dismiss will be granted.

# BACKGROUND

Plaintiffs initiated this action on June 11, 2015, on behalf of three Peabody ESOP Plans[1] and their participants and beneficiaries. Pursuant to Plan documents, participants

---

[1] The Peabody Investments Corporation ("PIC") Employee Retirement Account; the Peabody Western-UMWA 401(k) Plan; and the Big Ridge, Inc. 401(k) Profit Sharing

in each of the Plans directed how their investments were to be allocated among various investment options, including the "Peabody Energy Stock Fund" which could consist 100% of Peabody stock. Named as Defendants in Plaintiffs' original complaint were three Peabody-related corporate entities, and various entities and individuals who allegedly had responsibilities regarding the management and investment of the Plans' assets. Plaintiffs asserted that all Defendants were ERISA fiduciaries who breached their fiduciary duties by continuing to offer Peabody Stock as an investment option for the Plans from December 14, 2012, onward (the Class Period) when it was imprudent to do so; maintaining the Plans' existing significant investment in Peabody Stock when it was no longer a prudent investment for the Plans; failing to avoid conflicts of interest; and failing adequately to monitor other persons to whom management of the Plans was delegated. The imprudence alleged was based on the collapse of coal prices during the Class Period and indications that Peabody was headed to bankruptcy.

On November 8, 2015, approximately five months after the initial complaint was filed, the Office of the Attorney General of New York ("NYAG") issued an "Assurance of Discontinuance" based on an investigation concerning disclosures made by Peabody about climate change and the potential effects of climate change on Peabody's future business. The NYAG found that Peabody had misstated in its SEC Form 10-K filings from 2011 through 2014, that it could not reasonably predict the impact regulatory action regarding emissions from coal combustion would have on Peabody's future business,

---

Plan and Trust. Effective December 31, 2014, the Big Ridge Plan was merged into the PIC Plan.

when in fact, Peabody had made market projections in the ordinary course of business that found that certain potential regulatory scenarios could "materially and adversely" impact Peabody's future financial condition. In addition in numerous SEC filings, Peabody omitted less favorable projections of the International Energy Agency for future coal demand. The Assurance of Discontinuance further stated that Peabody neither admitted nor denied the NYAG's findings, but agreed that in future SEC filings and public communications it would not engage in the above-described behavior. ECF No. 72-1.

In December 2015, Peabody appointed Gallagher Fiduciary Advisors, LLC, ("Gallagher") to serve as an independent fiduciary and investment manager for the Plans with respect to the Peabody Stock Fund. By letter dated February 26, 2016, Gallagher informed the ESOP participants that it had decided (1) to "restrict the [Peabody] Stock Fund to all participant activity effective as of March 9, 2016, and (2) to eliminate the [Peabody] Stock Fund as an investment option in each Plan, on or around March 16, 2016." ECF No. 88-1. Gallagher stated that it had concluded that "maintaining the [Peabody] Stock Fund as an investment option is no longer consistent with the fiduciary responsibility provisions of ERISA, and that Gallagher's decision "simply reflects [its] judgment, as a fiduciary, that it is in the interest of the Plans' participants to eliminate [their] exposure within the Plans through the [Peabody] Stock Fund to the risks facing the Company and Peabody Stock." *Id*.

The second amended – and operative – complaint was filed on March 11, 2016. ECF. No. 72. Defendants are the Retirement Committees of the three Plans that were charged with selecting and monitoring the Plans' investment options; individual members of the Retirement Committees; the Board of Directors of PIC that appointed the PIC Plan Retirement Committee members; and individual members of the PIC Board of Directors. The gravamen of Plaintiffs' claims continues to be that Defendants breached their duties as ERISA fiduciaries by retaining Peabody stock as a retirement investment option in the Plans from December 14, 2012, onward. To their original claim that purchasing/retaining Peabody stock was imprudent due to public information about the global decline in coal prices and clear indicia during the Class Period that Peabody was headed toward bankruptcy ("public information claim"), Plaintiffs add a claim that purchasing/retaining the stock was imprudent due to the stock price being "artificially inflated." Plaintiffs allege that Defendants should have known this because of nonpublic information of which they were aware but withheld, namely that laws and regulations to cut carbon emissions from the combustion of coal would have a detrimental effect on Peabody stock ("inside information claim"). As a remedy, Plaintiffs seek monetary damages that would restore the values of the Plans' assets to what they would have been if the Plans had been properly administered.

In their second amended complaint, Plaintiffs plead that facts such as the following rendered continued investment of Plans' assets in Peabody common stock imprudent: (a) the collapse of coal prices which drastically and for the foreseeable future

4

compromised Peabody's financial health; (b) Peabody's deteriorating "Z-score" – a formula used by financial professionals to predict whether a company is likely to go into bankruptcy – which indicated that Peabody was is in danger of bankruptcy; (c) an excessive increase in the Company's debt to equity ratio; and (d) increased costs due to the acquisition of an Australian coal company. Plaintiffs fault Defendants for continuing to allow Plaintiffs "to gamble their retirement savings on a 'pure coal play,'" despite the "predictions that the domestic coal market was facing a long-term, if not permanent, sea-change." *Id*. at 9-10.

Plaintiffs also claim that Peabody stock was "artificially inflated" during the Class Period because certain information about risks to Peabody's business was not disclosed to the market, as found by the NYAG – namely, the extent of the adverse effect that regulations on emissions from coal combustion would have on Peabody. To support this nonpublic information claim, Plaintiffs posit two alternative actions that Defendants should have taken: (1) "directed that all Company and Plan Participant contributions to the Company Stock fund be held in cash rather than be used to purchase Peabody stock"; and (2) "closed the Company Stock itself to further contributions and directed that contributions be diverted from Company Stock." *Id*. at 99-100.

The second amended complaint represents that as of the start of the Class Period on December 14, 2012, the Plans held an estimated total of approximately $48 million in Peabody stock, and that "using the current pricing scale, Peabody Stock was trading at $398 at the beginning of the Class Period compared to its price of $6.39 as of March 10,

2016," the most recent trading day preceding the filing of the second amended complaint. (Doc. No. 72 at 14.)

In Counts III and IV, Plaintiffs assert claims against the Director Defendants for failing adequately to monitor the fiduciary Defendants and provide them with complete information, and rather, "standing idly by as the Plans suffered enormous losses as a result of the appointees' imprudent actions and inaction with respect to Company Stock; and failing to remove appointees whose performance was inadequate in that they continued to permit the Plans to make and maintain investments in the Company Stock despite the practices that rendered it an imprudent investment during the Class Period." *Id*. at 112.

Plaintiffs assert in the second amended complaint itself that their claims are not foreclosed by *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). As will be discusssed below, *Dudenhoeffer* held with respect to public information claims against ESOP fiduciaries, that "allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances . . . affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information." *Dudenhoeffer*, 134 S. Ct. at 2471-72 (citations omitted). And with respect to nonpublic information claims against ESOP fiduciaries, *Dudenhoeffer* held that to survive a motion to dismiss, such claims must allege alternative action that the fiduciary could have taken consistent with securities laws, actions that a

6

prudent fiduciary would not have viewed as more likely to harm the plan than to help it. *Id*. at 2472.

Plaintiffs stated in the second amended complaint that (a) withholding of the market projections from the public, (b) objective criteria, such Peabody's Z-Score predicting Peabody's demise, (c) Peabody's "overwhelming unserviceable" debt, and (d) Defendants' failure to properly investigate the continued prudence of Peabody Stock, individually and collectively, represent the kind of "special circumstances" contemplated by the Supreme Court in *Duddenhoeffer*. ECF No. 72-7-8. And in support of their breach of fiduciary duty claims, Plaintiffs cited to *Tribble v. v. Edison, Int'l*, 135 S. Ct. 1823 (2015), a post-*Duddenhoeffer* case that held that reaffirmed that "an ERISA fiduciary's duty is derived from the common law of trusts," and held that "[u]nder trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones." *Tribble*, 135 S. Ct. at 1828.

On April 13, 2016, Peabody filed a Notice of Bankruptcy informing the Court that, on that day, Peabody and certain related entities filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.[2]

**Arguments of the Parties**

Defendants argue that an impending bankruptcy is not the type of "special circumstance" the Supreme Court had in mind in *Dudenhoeffer*. Public information that a company was headed to bankruptcy, Defendants argue, is the kind of information to

---

[2] On March 17, 2017, the Bankruptcy Court confirmed Peabody's Chapter 11 Reorganization Plan.

which the market price would adjust. Similarly, Peabody's Z-Score and debt load are just other pieces of public information that were incorporated into the stock price. And, argue Defendants, a failure to investigate the continued prudence of investing in Peabody stock would not constitute a "special circumstance" under *Dudenhoeffer* because the extent to which Defendants monitored Peabody stock had no impact on its market price or the price's reliability. When asked at oral argument what he thought "special circumstances" in this context meant, counsel for Defendants responded that a special circumstance would be if, for example, the fiduciary was aware that the books of the company were not accurate.

Defendants contend that Plaintiffs are improperly "short circuiting" *Duddenhoeffer*'s careful delineation of distinct tests for public information and nonpublic information claims by arguing that the Peabody projections that were undisclosed until November 8, 2015, constitute a "special circumstance" for Plaintiffs' public information claim. Defendants further argue that Plaintiffs' nonpublic information claim fails because Plaintiffs have not plausibly alleged an alternative action that Defendants could have taken that a prudent fiduciary in the same circumstances could not have viewed as more likely to harm the Peabody stock fund than to help it, as *Dudenhoeffer* requires. Defendants argue that the failure to monitor claims in Counts III and IV are derivative of the breach of prudence claims, and so fail too, as a matter of law.

In response, Plaintiff reassert that the following allegations, individually and collectively, represent "special circumstances" under *Dudenhoeffer* that rendered reliance

8

on Peabody's stock price imprudent: (1) Defendants' withholding, until November 8, 2015, its market projections about the impact of potential climate change regulatory actions; (2) Peabody's Z-Score and unserviceable debt; and (3) Defendants' failure to investigate the continued prudence of investing in Peobody stock. ECF No. 88 at 9-10. Plaintiffs argue that Peabody's actions in hiring Gallagher were simply too little too late.

Plaintiffs maintain that their nonpublic information claim can proceed, as the complaint plausibly alleges that an earlier disclosure of Peabody's actual projections of its financial future "would have resulted in fewer misrepresentations, which would inevitably led to a smaller loss by the Plans, or at the very least would have let Participants understand the true risks of Peabody Stock." *Id*. at 14 n. 41. Lastly, Plaintiffs argue that their failure-to-monitor claims can stand alone.

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The court must accept the complaint's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions the complaint draws from the facts alleged. *Id*. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.; *see also McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015).

**Public Information Claim**

ERISA imposes duties of loyalty and prudence on a plan fiduciary. 29 U.S.C. § 1104(a)(1)(A)-(B). Prudence requires the fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id*. This includes choosing wise investments and monitoring investments to remove imprudent ones. *Tibble,* 135 S. Ct. at 1828-29.

A close reading of the *Dudenhoeffer* opinion cited above is called for. The Supreme Court decision consists of two interrelated parts. In the first part, the Supreme Court considered whether ESOP fiduciaries were entitled to a special "presumption of prudence," or whether they were subject to the same duty of prudence that applies to ERISA fiduciaries in general (except that they need not diversify the plan's assets). In the second section, the Court considered whether, when the correct standard of prudence was applied, the plaintiffs in that case stated a claim.

In that case, participants in Fifth Third Bancorp's ESOP brought a putative class action against Fifth Third Bancorp (their employer) and various of its officers under ERISA, alleging that the defendants were plan fiduciaries who breached their duty of prudence by continuing to buy and hold Fifth Third Bancorp stock when they knew or should have known that stock was overvalued and excessively risky. The Supreme Court described the complaint as follows:

> The complaint alleges that by July 2007, the fiduciaries knew or should have known that Fifth Third's stock was overvalued and excessively risky for two separate reasons. First, publicly available information such as newspaper articles provided early warning signs that subprime lending, which formed a large part of Fifth Third's business, would soon leave creditors high and dry as the housing market collapsed and subprime borrowers became unable to pay off their mortgages. Second, nonpublic information (which petitioners knew because they were Fifth Third insiders) indicated that Fifth Third officers had deceived the market by making material misstatements about the company's financial prospects. Those misstatements led the market to overvalue Fifth Third stock—the ESOP's primary investment—and so petitioners, using the participants' money, were consequently paying more for that stock than it was worth.
>
> The complaint further alleges that a prudent fiduciary in petitioners' position would have responded to this information in one or more of the following ways: (1) by selling the ESOP's holdings of Fifth Third stock before the value of those holdings declined, (2) by refraining from purchasing any more Fifth Third stock, (3) by canceling the Plan's ESOP option, and (4) by disclosing the inside information so that the market would adjust its valuation of Fifth Third stock downward and the ESOP would no longer be overpaying for it.
>
> Rather than follow any of these courses of action, petitioners continued to hold and buy Fifth Third stock. Then the market crashed, and Fifth Third's stock price fell by 74% between July 2007 and September 2009, when the complaint was filed. Since the ESOP's funds were invested primarily in Fifth Third stock, this fall in price eliminated a large part of the retirement savings that the participants had invested in the ESOP. (The stock has since made a partial recovery to around half of its July 2007 price.)

*Duddenhoeffer*, 134 S. Ct. at 2464.

The district court dismissed the complaint for failure to state a claim, but the Sixth Circuit reversed, concluding that ESOP fiduciaries are entitled to a "presumption of prudence" but that the presumption was an evidentiary one and therefore did not apply at the pleading stage. The court went on to hold that the complaint stated a claim for breach of fiduciary duty.

11

As noted above, the Supreme Court, in the first part of its opinion, considered whether ESOP fiduciaries were entitled to any special presumption of prudence, and held they were not. In reaching this conclusion, the Court canvassed the varying approaches taken by circuit courts on the matter. The Court cited cases from the Ninth and Seventh Circuits that recognized the presumption of prudence, but that held the presumption could be overcome at the pleading stage by allegations that "clearly implicate the company's viability as an ongoing concern," *Dudenhoeffer*, 134 S. Ct. at 2466 (quoting *Quan v. Computer Scis. Corp.*, 623 F.3d 870, 882 (9th Cir. 2010)0, or "that the company faced 'impending collapse' or 'dire circumstances,'" *id*. (quoting *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 989 (7th Cir. 2013)).

The Supreme Court then rejected the presumption of prudence standard, based on the statutory language of ERISA itself. The Court recognized Congressional intent to encourage ESOPs, and that allowing meritless claims against ESOP fiduciaries would frustrate that intent. But the Court stated as follows:

> [W]e do not believe that the presumption at issue here is an appropriate way to weed out meritless lawsuits or to provide the requisite "balancing." The proposed presumption makes it impossible for a plaintiff to state a duty-of-prudence claim, no matter how meritorious, unless the employer is in very bad economic circumstances. Such a rule does not readily divide the plausible sheep from the meritless goats. That important task can be better accomplished through careful, context-sensitive scrutiny of a complaint's allegations. We consequently stand by our conclusion that the law does not create a special presumption of prudence for ESOP fiduciaries.

*Id*. at 2470-71.

The Supreme Court explained that other mechanisms existed for weeding out meritless claims, noting, specifically, a motion to dismiss for failure to state a claim. And in the second part of its decision, the Court set a high bar for stating a claim against an ESOP fiduciary, as follows:

> In our view, where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances . . . affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information.

*Id*. at 2471-72 (citations omitted).

The Supreme Court stated that it was not considering what special circumstance a plaintiff could point to in order to survive a motion to dismiss, but determined that in the case before it such a circumstance was not pleaded:

> In this case, the Court of Appeals held that the complaint stated a claim because respondents allege that Fifth Third engaged in lending practices that were equivalent to participation in the subprime lending market, that Defendants were aware of the risks of such investments by the start of the class period, and that such risks made Fifth Third stock an imprudent investment. The Court of Appeals did not point to any special circumstance rendering reliance on the market price imprudent. The court's decision to deny dismissal therefore appears to have been based on an erroneous understanding of the prudence of relying on market prices.

*Id*. at 2472.

The Eighth Circuit has not yet addressed the question of what "special circumstances" a plaintiff could allege that would render reliance on the market price imprudent. The Seventh Circuit has reflected that "[*Dudenhoeffer*] suggested that the

13

special circumstances might include something like available public information tending to suggest that the public market price did not reflect the true value of the shares." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 679 (7th Cir. 2016). This Court believes a close question is presented with respect to whether a company's impending bankruptcy is a special circumstance contemplated by the Supreme Court, at the pleading stage. As described above, while striking down the presumption of prudence, the Supreme Court offered ESOP fiduciaries a different protection from meritless claims, namely a high standard for stating a claim. But did the Supreme Court intend to set the standard so high as to preclude the kinds of "careening to bankruptcy" cases courts had found overcame the presumption?

This Court concludes that the answer is yes. As quoted above, the Supreme Court specifically stated that the presumption, along with the exception for "careening to bankruptcy" cases, was not a good rule for weeding out meritless cases. While there is credible contrary authority, the weight of authority appears to agree with this conclusion. *See In re 2014 RadioShack ERISA Litig.*, 165 F. Supp. 3d 492, 504-05 (N.D. Tex. 2016) (holding that the a company's "slide into bankruptcy" rendering its stock excessively risky was not a "special circumstance" under *Dudenhoeffer*); *Pfeil v. State St. Bank & Trust Co.*, 806 F.3d 377, 380 (6th Cir. 2015) (holding that a company's "severe business problems that resulted, ultimately, in its bankruptcy" did not constitute a *Dudenhoeffer* special circumstance; explaining that "organized securities markets are so efficient at discounting securities prices that the current market price of a security is highly likely

14

already to impound the information that is known or knowable about the future prospects of that security"), *cert. denied*, 136 S. Ct. 2511 (2016); *In re Citigroup ERISA Litig.*, 104 F. Supp. 3d 599, 615 (S.D.N.Y 2015) (same); *but see Gedek v. Perez*, 66 F. Supp. 3d 368, 375, 379 (W.D.N.Y. 2014) ("Nor did the [Supreme] Court [in *Dudenhoeffer*] address the situation presented by the plaintiffs' factual allegations here, *i.e.*, allegations that a company's downward path was so obvious and unstoppable that, regardless of whether the market was 'correctly' valuing the stock, the fiduciaries should have halted or disallowed further investment in it"; "[the plaintiffs] allege that Kodak stock was on a long, steady, virtually unstoppable downhill slide, and that no prescience or inside knowledge was needed to realize that it would continue to do so. That, in my view, states a claim under ERISA as to the ESOP.").

This does not quite end the inquiry here, because another fact was pleaded as a "special circumstance . . . affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information." That alleged fact is that Peabody misstated in its SEC Form 10-K filings from 2011 through 2014, that it could not predict the impact regulatory action regarding emissions from coal combustion would have on Peabody's future business, when in fact, Peabody had made market projections that found that such regulatory action would have a "severe negative impact" on its future financial condition. But this is just the kind of allegation that the plaintiffs in *Dudenhoeffer* itself asserted, and that the Supreme Court did not consider a special circumstance

15

allowing a public information claim to go forward. Rather, as quoted above, the Court considered such an allegation as potentially supporting a nonpublic information claim. This Court will do the same.

Lastly, reliance on *Tibble* does not avail Plaintiffs, given their failure to allege facts to support a claim that Defendants here breached their fiduciary duties by not monitoring the ESOP investments. The essence of Plaintiffs' claims is that Defendants made imprudent decisions, not that Defendants abandoned their decision-making duties. *See In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 758 (S.D.N.Y. 2015) ("Neither *Dudenhoeffer* nor *Tibble* permits ERISA claims to withstand challenge based on such threadbare allegations" that the defendants did not monitor ESOP investments), *aff'd sub nom. Rinehart,* 817 F.3d 56.

In sum, the Court will grant Defendants' motion to dismiss Plaintiffs' claim that Defendants breached their duty of prudence under ERISA by retaining and continuing to purchase Peabody stock from December 14, 2012, onwards, in light of public information that established that such conduct was not reasonable.

**Nonpublic Information Claim**

In considering Plaintiff's claim based on Defendants' knowledge of Peabody's alleged failure to disclose, from 2011 up to November 8, 2015 (the date of the Assurance of Discontinuance), that it had made adverse market projections, and Peabody's other alleged deceptive representations regarding the future of coal,

the Court again turns to *Dudenhoeffer*. As noted above, the Supreme Court held in that case that to state a viable nonpublic information claim, an ESOP/ERISA plaintiff "must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Dudenhoeffer*, 134 S. Ct. at 2472. The Supreme Court elaborated that

> lower courts faced with such claims should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases—which the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment—or publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund.

*Id*. at 2473.

In *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016), the Supreme Court clarified that the complaint itself must plausibly allege "that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.'" *Id*. at 760 (quoting *Dudenhoeffer*, 134 S. Ct. at 2463). The Court explained that a lower court cannot simply presume that the plaintiff's proposed alternatives would satisfy the *Dudenhoeffer* standards; rather, "the facts and allegations supporting that proposition should appear in the . . . complaint." *Id*.

Here, the Court concludes that the complaint does not meet this requirement. Plaintiffs do not allege, for each proposed alternative, that a prudent fiduciary could not have concluded that the alternative would do more harm than good, nor do they offer facts that would support such an allegation. Thus, Plaintiffs' nonpublic information claim fails. *See Whitley v. BP, P.L.C.*, 838 F.3d 523, 529 (5th Cir. 2016) (reversing the district court's grant of ESOP participants' motion to amend where the proposed amended complaint alleged that plan fiduciaries had inside information that "BP stock was overpriced because BP had a greater risk exposure to potential accidents than was known to the market" prior to the Deepwater Horizon explosion, but did not allege that a prudent fiduciary *could not have concluded* that the alternative would do more harm than good, and did not offer facts that would support such an allegation); *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 68 (2d Cir. 2016) (affirming a dismissal under Rule 12(b)(6) because the plaintiffs' complaint did not "plausibly plead facts and allegations showing that a prudent fiduciary during the class period 'would not have viewed [disclosure of material nonpublic information regarding Lehman or ceasing to buy Lehman stock] as more likely to harm the fund than to help it'") (quoting *Amgen*, 136 S. Ct. at 759)), *cert. denied*, No. 16-562, 2017 WL 670226 (Feb. 21, 2017); *In re Jpmorgan Chase & Co. Erisa Litig.*, No. 12 CIV. 04027 (GBD), 2016 WL 110521, at *3 (S.D.N.Y. Jan. 8, 2016), *aff'd sub nom. Loeza v. John Does 1-10*, 659 F. App'x 44 (2d Cir. 2016); *In re: Idearc Erisa Litig.*, No. 3:09-CV-2354-N, 2016 WL 7189981, at *6 (N.D. Tex. Oct. 4,

2016); *Martone v. Whole Foods Mkt., Inc.*, No. 1:15-CV-877 RP, 2016 WL 5416543, at *8 (W.D. Tex. Sept. 28, 2016).

**Breach of Duty-to-Monitor-Others Claim**

The Court agrees with Defendants that Plaintiffs' claims that Defendants breached their duty to monitor others are derivative of the breach of loyalty/prudence claims, and therefore, in light of the above rulings, fail as a matter of law. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010) (holding that derivative monitoring claims cannot "survive without a sufficiently pled theory of an underlying breach") (citing *Ward v. Avaya, Inc.*, 487 F. Supp. 2d 467, 481 (D.N.J. 2007) ("Plaintiff's complaint has failed to state a claim for breach of fiduciary duty . . . as to any of the Plans' fiduciaries. Consequently, Plaintiff's claims for failing to adequately monitor these fiduciaries must also fail.")).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED.** (Doc. No. 83.)

A separate Order of Dismissal shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2017.